UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

*FILED*

MAY 13 2013

FREDERICK J. KAPALA
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 50051-3 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| JOANNE BLANCHARD | ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant JOANNE BLANCHARD, and her attorney, ROBERT M. FAGAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.  The indictment in this case charges defendant with one count of mail fraud, in violation of Title 18, United States Code, Section 1341, and two counts of making material false statements in a matter within the jurisdiction of a federal agency, in violation of Title 18, United States Code, Section 1001(a)(2).

3.  Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.  Defendant fully understands the nature and elements of the crimes with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Ten, which charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

### Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charge contained in Count Ten of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

(a)      In general, defendant admits that from as early as May 2007, and continuing to at least December 9, 2010, she knowingly engaged in a scheme to defraud U.S. military veterans enrolled in a program known as NASA. Defendant further admits that, on October 14, 2008, for purposes of executing this scheme to defraud, she knowingly caused to be delivered by mail, according to the direction thereon, an envelope containing a check drawn on the United States Treasury, in the amount of $7,825.48, remitted as payment on a contract for painting services performed at the Veteran's Administration Hospital in Batavia, New York, that envelope being delivered to: Liberating Solutions Corp., 6819 Hillside Road, Crystal Lake, Illinois 60012-3231.

(b)      Specifically, defendant admits that from 1998 through 2012, she was employed by businesses owned by her husband, co-defendant John Blanchard. These businesses included National Association of System Administrators, Inc. ("NASA, Inc."),

2

National Association of System Administrators Corporation ("NASA Corp."), NASA Education Corporation ("NASA Education"), and Liberating Solutions Corporation "Liberating Solutions." Defendant was the Chief Financial Officer and bookkeeper for these companies.

Liberating Solutions was purported to be a Service Disabled Veteran Owned Small Business. John Blanchard represented that "Individual A" was a part owner of Liberating Solutions. Individual A is a service disabled veteran. However, Individual A had no active involvement in Liberating Solutions. In addition, Individual A did not receive any of the profits from the operation of Liberating Solutions. Instead, Individual A worked as a receptionist for NASA, Inc.

Individual A left her employment with NASA, Inc., in either July or August of 2007. After she left her employment with NASA, Inc., Individual A had no affiliation or involvement with Liberating Solutions. Despite this fact, John Blanchard continued to represent that Individual A was an owner and officer of Liberating Solutions.

During the time that she worked for John Blanchard's businesses, Liberating Solutions bid on, and was awarded, several contracts with federal, state, and local governmental agencies. These contracts included: (1) a September 2007 contract with the United States Department of Veterans Affairs ("VA") to provide labor for a painting project at a VA Hospital in Batavia, New York; (2) a September 2007 contract with the U.S. Air Force to provide grounds maintenance at Kirtland Air Force Base in Albuquerque, New Mexico; (3) an October 2007 contract with U.S. Air Force to supply a computer support technician at

Fairchild Air Force Base in the state of Washington; (4) a May 2008 contract with the U.S. Army for the erection of tents at Fort McCoy in Wisconsin; (5) a July 2008 contract with the McHenry County Housing Authority for the performance of roofing and remodeling work; and (6) a December 2008 contract with the Kane County Forest Preserve for the demolition of certain structures.

The contracts identified above were all governed by the Service Contract Act, the Davis Bacon Act, or Illinois prevailing wage laws. The Service Contract Act requires that companies which contract with the federal government to furnish services through the use of service employees must pay those employees certain minimum monetary wages. The Davis-Bacon Act requires that companies that receive federally funded contracts for the construction, alteration, or repair (including painting and decorating) of public buildings must pay their laborers no less than the locally prevailing wages and fringe benefits for corresponding work on similar projects in the area. Federal regulations which implement the Davis Bacon Act require that, during the performance of the contract, companies must submit certified weekly payroll records to the government's Contracting Officer. Similarly, Illinois law requires that companies that provide labor under contracts with local governmental agencies must pay their workers prevailing wage rates and submit certified payrolls.

Defendant was aware that the Liberating Solutions contracts were governed by the Service Contract Act, Davis Bacon Act, and Illinois prevailing wage laws. Defendant was also aware that much of the labor for these contracts was provided by veterans enrolled with NASA Education. Defendant was further aware that the veterans who labored under the

4

Liberating Solutions contracts were either not paid for their work, or were not paid the amount of wages required under the Service Contract Act, the Davis Bacon Act, and Illinois prevailing wage law.

Defendant knowingly assisted in causing veterans to perform work under these contracts for which they did not receive the required amount of wages. For example, when one of the veterans who was working on the painting contract at the VA Hospital in Batavia, New York complained about the fact that he was not getting paid, defendant drove another veteran from Illinois to New York to replace the veteran who had complained.

Defendant also knowingly assisted her co-defendants in concealing the fact that the veterans who worked under the Liberating Solutions contracts were not being paid. As part of this concealment, defendant prepared and submitted to the federal, state, and local governmental agencies certified payrolls that contained false information.

Co-defendant Eric Behler provided information to defendant about the veterans who worked under the contracts, including their names, sexes, dates worked, and number of hours worked. When he submitted this information to her, Behler suggested that defendant substitute on the certified payrolls the names of workers employed by NASA, Inc., for the names of the veterans who actually worked under the contracts.

Defendant followed Behler's suggestion and put payroll information for NASA, Inc. employees on the certified payrolls. These employees of NASA, Inc., were being paid wages at or near the federal and state prevailing wage rates. By substituting the names of NASA, Inc., employees for the names of the veterans, defendant concealed the fact that Liberating

5

Solutions was not paying the veterans wages at the rates required by the Service Contract Act, the Davis Bacon Act, and the Illinois prevailing wage laws.

Defendant admits that there were at least 31 veterans who worked under the Liberating Solutions contracts and were not paid the wages they were owed as required by the Service Contract Act, the Davis Bacon Act, and Illinois prevailing wage laws. Defendant further admits that these veterans were owed a total of at least $101,074.26 in wages that were not paid to them.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

6

     c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

     a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

     b.     **Offense Level Calculations.**

     i.     The parties agree that the base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

     ii.     The parties further agree that the offense level must be increased by 8 levels, pursuant to Guideline § 2B1.1(b)(1)(E), because the loss caused by defendant's offense was more than $70,000.

iii.     The parties further agree that the offense level must be increased by an additional 2 levels, pursuant to Guideline §2B1.1(b)(2)(A)(i), because defendant's offense involved 10 or more victims.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

8

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 14, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall

9

not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.  This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding.  Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation.  If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range.  Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.  The government will make no recommendation regarding the sentence to be imposed.

13.    If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth

in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victims is $101,074, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 50051-3.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

22. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and her spouse or defendant's partnership or corporations.

12

## Waiver of Rights

23.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

13

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.     **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1,

14

defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        c.     Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

15

## Presentence Investigation Report/Post-Sentence Supervision

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

16

subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and her spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

        a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and her spouse and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

        b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure to the Internal Revenue

17

Service of documents, testimony, and related investigative materials that may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the IRS for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and her spouse or defendant's partnerships or corporations.

29.    Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and her spouse and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request.

30.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's

18

Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and her spouse or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant and her spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

31.     Defendant understands that 10 U.S.C. § 2408 provides for a mandatory term of debarment of at least five years for any individual convicted of fraud or any other felony arising out of a contract with the Department of Defense. The term of debarment may only be waived if the Secretary of Defense determines a waiver is in the interests of national security. The defendant understands that she may be subject to administrative action by other federal or state agencies, based upon the conviction resulting from this Plea Agreement and upon grounds other than 10 U.S.C. § 2408. This Plea Agreement in no way controls whatever action, if any, other agencies may take. The defendant nevertheless affirms that she wants to plead guilty regardless of the debarment or administrative action consequences of his plea.

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _5/13/13_

GARY S. SHAPIRO
United States Attorney

JOANNE BLANCHARD
Defendant

SCOTT A. VERSEMAN
Assistant U.S. Attorney
327 South Church Street – Suite 3300
Rockford, Illinois 61101
815-987-4444

ROBERT M. FAGAN
Attorney for Defendant
10 North Galena Avenue
Freeport, Illinois 61032
815-233-5800

21